**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VARENTEC, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 16-217-RGA-MPT |
| | : | |
| GRIDCO, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a patent case.  On April 1, 2016, Varentec, Inc. ("plaintiff") filed this action

alleging Gridco, Inc. ("defendant") infringes U.S. Patent Nos. 9,293,922 ("the '922

patent") and 9,014,867 ("the '867 patent").[1]  On June 3, 2016, plaintiff filed a Motion for

a Preliminary Injunction,[2] which the court denied on October 3, 2016.[3]  On November 3,

2016, the court granted plaintiff's Unopposed Motion to Amend the Complaint.[4]  On that

same date, plaintiff filed its Amended Complaint for Patent Infringement which includes

a claim that defendant also infringes plaintiff's U.S. Patent No. 9,104,184 ("the '184

patent").[5]  On November 21, 2016, defendant filed its Answer to the Amended

Complaint for Patent Infringement, Affirmative Defenses, and Counterclaims.[6]  Currently

---

[1] D.I. 1.  Plaintiff is a Delaware corporation, having a principal place of business
in Santa Clara, California.  D.I. 114 at ¶ 1.  Defendant is a Delaware corporation, having
a principal place of business in Woburn, Massachusetts.  *Id.* at ¶ 2.
[2] D.I. 18.
[3] D.I. 109, D.I. 110.
[4] D.I. 113.
[5] D.I. 114.
[6] D.I. 116.

before the court is plaintiff's Motion to Dismiss Defendant's Counterclaims, pursuant to FED. R. CIV. P. 12(b)(6).[7]

## II.   BACKGROUND

According to the Amended Complaint, plaintiff is a Santa Clara-based company that provides products and solutions that achieve smarter power delivery for its customers.[8]  Those products and solutions focus on "Grid Edge" power optimization and management.[9]  Plaintiff's patented products show an improved operation when there is distributed generation of power at the grid edge, and when there is no distributed generation of power.[10]  "Grid Edge" refers to the distribution end of the electrical grid–e.g., where consumers are located.[11]  Historically, energy distribution systems have been centrally managed, with power generated at central facilities, e.g., a power plant, and distributed via a power grid to points of use, such as a house, factory, or other electricity user.[12]  The electrical grid, however, is now undergoing a rapid transition from centralized power generation to smaller distributed power generators that are closer to the consumer.[13]  Examples of distributed power generators include renewable energy sources such as solar and wind.[14]  Because of the rapid growth of distributed power generation, new technology is necessary to efficiently manage power

---

[7] D.I. 123.
[8] D.I. 114 at ¶ 7.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

generated at the "Grid Edge."[15]  Plaintiff's patented technology fills this space.[16]  Its

products may deploy on the secondary, that is the edge side, of distribution

transformers to improve management of the power grid.[17]  Its products also improve

management of the power grid when there is no distributed generation of power.[18]

Plaintiff owns by assignment the entire right, title, and interest in the patents-in-suit.[19]

Defendant provides products and services focused on power system

management.[20]  Those products are on sale throughout the United States, including in

the State of Delaware.[21]  Plaintiff contends defendant's SVC-20 products infringe each

of the patents-in-suit.[22]  Plaintiff alleges defendant has been aware of its patents and

products since before this action was initiated and, nevertheless, chose to willfully

infringe plaintiff's patents.[23]

Defendant's Answer to the Amended Complaint, asserts eleven Causes of Action

("counterclaims").[24]  Plaintiff seeks dismissal of defendant's second through tenth

counterclaims.[25]  Defendant's second counterclaim alleges plaintiff is engaged in "sham

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at ¶ 8.
[20] *Id.* at ¶ 9.
[21] *Id.*
[22] *Id.* at ¶¶ 10-19.
[23] *Id.* at ¶ 20.

[24] D.I. 116 at ¶¶ 61-175.  All paragraph citations to D.I. 116 reference those paragraphs found in section "III.   Gridco's Counterclaims Against Varentec" in that document.

[25] D.I. 123; D.I. 124 at 1.  Plaintiff does not seek dismissal of defendant's first counterclaim for a Declaration of Non-Infringement, Invalidity, and Unenforceability of the Asserted Patents or defendant's eleventh counterclaim for Attorney Fees.  D.I. 123; D.I. 124 at 1 n.1.

litigation" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[26]  Defendant's

third and fourth counterclaims allege violations of Section 2 of the Sherman Act, 15

U.S.C. § 2,[27] and the Robinson-Patman Act, 15 U.S.C. § 13a,[28] respectively, by

plaintiff's purported below-cost pricing, in an attempt to achieve a monopoly, or

eliminate defendant as a competitor, also known as "predatory pricing."  Defendant's

fifth,[29] sixth,[30] seventh,[31] eighth,[32] ninth,[33] and tenth[34] counterclaims assert claims under

the "Unfair Practices" statutes of California, Hawaii, Massachusetts, Maryland,

Oklahoma, and Arkansas, respectively, also based on plaintiff's purported below-cost

pricing.

## III.    GOVERNING LAW

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss a complaint

for failure to state a claim upon which relief can be granted.  The purpose of a motion

under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed

facts or decide the merits of the case.[35]  "The issue is not whether a plaintiff will

---

[26] D.I. 116 at ¶¶ 67-80.

[27] *Id.* at ¶¶ 81-97.

[28] *Id.* at ¶¶ 98-109.

[29] *Id.* at ¶¶ 110-117 (Violation of California Unfair Practices Act, California Business and Professions Code §§ 17000, *et seq.*).

[30] *Id.* at ¶¶ 118-129 (Violation of Hawaii Unfair Practices Act, Hawaii Revised Statute §§ 480-2 and 481-3).

[31] *Id.* at ¶¶ 130-140 (Violation of Massachusetts Unfair Sales Act, Massachusetts General Laws Ch. 93).

[32] *Id.* at ¶¶ 141-149 (Violation of Maryland Sales Below Cost Act, Annotated Code of Maryland §§ 11-401, *et seq.*).

[33] *Id.* at ¶¶ 150-164 (Violation of Oklahoma Unfair Sales Act, Oklahoma Statutes Annotated §§ 598.1, *et seq.*).

[34] *Id.* at ¶¶ 165-172 (Violation of Arkansas Unfair Practices Act, Arkansas Code Annotated §§ 4-75-201, *et seq.*).

[35] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[36] A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[37] While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[38]

To survive a motion to dismiss, defendant's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[39] The defendant is therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[40] Although heightened fact pleading is not required, "enough facts to state

---

[36] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[37] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[38] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."). These principals also apply to a motion to dismiss counterclaims. *See, e.g.*, *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014); *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 306 (S.D.N.Y. 2011).

[39] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[40] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

a claim to relief that is plausible on its face" must be alleged.[41]  A claim has facial

plausibility when a plaintiff pleads factual content sufficient for the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.[42]  Once

stated adequately, a claim may be supported by showing any set of facts consistent

with the allegations in the complaint.[43]  Courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint, and matters of public

record when reviewing a motion to dismiss.[44]

---

[41] *Id.* at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[43] *Twombly*, 550 U.S. at 563 (citations omitted).

[44] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  The Third Circuit has rejected plaintiff's suggestion that the court must apply a heightened pleading standard, which it describes as "special scrutiny" that transforms the court into a "discovery gatekeeper," in light of defendant's antitrust claims.  *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) ("The District Court opined that judges presiding over antitrust and other complex cases must act as 'gatekeepers,' and must subject pleadings in such cases to heightened scrutiny.  The District Court's gloss on Rule 8, however, is squarely at odds with Supreme Court precedent.  Although *Twombly* acknowledged that discovery in antitrust cases 'can be expensive,' it expressly rejected the notion that a 'heightened' pleading standard applies in antitrust cases, and *Iqbal* made clear that Rule 8's pleading standard applies with the same level of rigor in 'all civil actions.'") (citations omitted); *id* ("We conclude that it is inappropriate to apply *Twombly*'s plausibility standard with extra bite in antitrust and other complex cases."); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007) ("Antitrust claims, at least those not akin to fraud, . . . are subject to the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only a short plain statement of the claim showing that the pleader is entitled to relief.") (internal citation and quotation marks omitted); *accord* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1221 (3d ed. 2004) (noting Rule 8's general pleading standard "controls in every case, regardless of its size, complexity, or the numbers of parties that may be involved").

## IV.  DISCUSSION

Defendant contends defendant's third and fourth counterclaims, alleging

predatory pricing in violation of § 2 of the Sherman Act, 15 U.S.C. § 2 and the

Robinson-Patman Act, 15 U.S.C. § 13(a), are implausible on their face[45] and that its fifth

through tenth counterclaims, alleging violation of several state law unfair practices

statutes, are derivative of defendant's federal predatory pricing claims and fail for the

same reasons.[46]  Plaintiff also contends defendant's second counterclaim, alleging

"sham litigation" in violation of § 2 of the Sherman Act, 15 U.S.C. § 2, violates the First

Amendment and is implausible on its face.[47]

### A.  Predatory Pricing (Counterclaims 3 and 4)

According to plaintiff, defendant's third counterclaim for attempted

monopolization under § 2 of the Sherman Act, and fourth counterclaim under the federal

Robinson-Patman Act, are both based on defendant's assertion that plaintiff engaged in

---

[45] D.I. 124 at 5-10.  Section 2 of the Sherman Act imposes liability on "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with another person or persons, to monopolize any part of the trade or commerce among the several States . . . ."  15 U.S.C. § 2.  The Robinson-Patman Act provides, in part, that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . ."  15 U.S.C. § 13(a).

[46] D.I. 124 at 17-18.

[47] *Id.* at 10-16.

below-cost pricing to harm defendant's business, an antitrust theory referred to as "predatory pricing."[48]

"A claim of attempted monopolization under § 2 of the Sherman Act must allege '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'"[49]

> [W]hether the claim alleges predatory pricing under § 2 of the Sherman Act or primary-line price discrimination under the Robinson-Patman Act, two prerequisites to recovery remain the same. First a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs. . . . The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices.[50]

### 1. Plausible Allegations that Plaintiff Priced Below Its Cost

"To sufficiently plead the first element of a predatory pricing claim, a plaintiff must allege more than prices that are 'below general market levels or the costs of a firm's competitors.' Instead, a plaintiff must plead something akin to 'what [the defendant's] actual costs were' or, in some situations, 'standard industry cost.'"[51]

---

[48] *Id.* at 5.

[49] *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007) (quoting *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998)).

[50] *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993) (citations and footnote omitted).

[51] *Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, No. 12 Civ. 1728 (RJS), 2013 U.S. Dist. LEXIS 45921, at *8 (S.D.N.Y. Mar. 24, 2013) (alteration in original) (quoting *Brooke Grp. Ltd.*, 409 U.S. at 223. On appeal, the Second Circuit reiterated that "[i]n order to plead a predatory pricing claim under § 2 of the Sherman Act, a plaintiff must first allege 'that the prices complained of are below an appropriate measure of its rival's costs' . . . ." *Affinity LLC v. GfK Research & Intelligence, LLC*, 547

Plaintiff maintains defendant fails to plausibly allege plaintiff priced below its costs because it fails to allege plaintiff's "actual costs."[52]  Instead, defendant purportedly relies on boilerplate and conclusory assertions that plaintiff is pricing below cost.[53]

Defendant's counterclaims fail to allege either plaintiff's actual costs or standard industry costs.  As it has been noted, "the difficulty of meeting a pleading standard does not provide an excuse for failing to satisfy that standard."[54]  Defendant merely makes conclusory allegations in support of its predatory pricing claims.  Defendant alleges:

> Varentec has engaged in predatory or anticompetitive conduct by offering discounts on its ENGO-V10 product, or components of its product, to electric utility customers nationwide. . . .  Varentec's practice of discounting its ENGO-V10 product, or components of the product in some instances, has resulted in Varentec selling the product, or components of the product, on a below-cost basis.[55]
>
> Varentec has repeatedly offered electric utility customers nationwide substantial percentage discounts on its ENGO-V10 product, or components of its product.  In at least one instance, Varentec offered its ENGO-V10 hardware to a [sic] electric utility customer at a 100% discount. . . .  Employing percentage discounts to its ENGO-V10 product, or

---

Fed. App'x 54, 56 (2d Cir. 2013) (quoting *Brooke Grp. Ltd.*, 409 U.S. at 222; *see also Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 Fed. App'x 334, 336 (2d Cir. 2011)) ("A defendant's pricing practice violates the Sherman Act only if the plaintiff can 'prove that the prices complained of are below an appropriate measure of [the defendant's] costs.'  The complaint fails properly to allege as much. . . .  The complaint is silent with respect to what [defendant] ultimately charged Disney or what [defendant's] actual costs were.") (first alteration in original) (quoting *Brooke Grp. Ltd.*, 409 U.S. at 222).

[52] D.I. 124 at 8.

[53] *Id.*

[54] *Affinity LLC*, 2013 U.S. Dist. LEXIS 45921, at *11-12; *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 266 (2d Cir. 2001) ("[T]he Supreme Court has expressed deep skepticism regarding the viability of proving a predatory pricing scheme.") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986) ("[P]redatory pricing schemes are rarely tried, and even more rarely successful.")).

[55] D.I. 116 at ¶¶ 82-83.

components of the product, has resulted in sales below cost.[56]

Defendant's assertion that plaintiff offered discounts resulting in below-cost pricing are not supported by any factual allegations. Without alleging plaintiff's actual costs, or industry standard cost, it is impossible to plausibly conclude that those alleged discounts resulted in below-cost pricing. Moreover, with exception of "one instance," defendant does not even allege the percentage discounts that were purportedly offered, other than simply declaring they were "substantial."

Defendant alleges that in "at least one instance," plaintiff offered a customer a "100% discount." Even there, defendant does not plead facts supporting its allegation, including when, and to what customer, the discount was offered. Defendant also makes no allegation that it suffered any harm from that purported offer. Also, allegations related to a single offer do not plausibly support its predatory pricing claims. The Second Circuit found that assertions "limited to a single bid for a single contract" do not plausibly allege predatory pricing because "an allegation that one of those contracts provides below-cost prices for services is insufficient to allege predatory pricing."[57] Likewise, the Eighth Circuit has noted "[c]ourts have been wary of plaintiffs' attempts to prove predatory pricing through evidence of a low price charged for a single product out of many, *or to a single customer.*"[58] Consequently, the court determines defendant's predatory pricing claims under the Sherman Act and Robinson-Patman Act fail to

---

[56] *Id.* at ¶¶ 31-32.

[57] *Astra Media Grp.*, LLC, 414 Fed. App'x at 336.

[58] *Morgan v. Ponder*, 892 F.2d 1355, 1362 (8th Cir 1989) (emphasis added) (citations omitted).

plausibly allege plaintiff engaged in below-cost pricing.[59]

### 2.      Plausible Allegations of a Relevant Market

To adequately allege its antitrust claims, defendant must define the relevant

market that plaintiff is alleged to attempt to monopolize.[60]

> "The outer boundaries of a product market are determined by the
> reasonable interchangeability of use or the cross-elasticity of demand
> between the product itself and substitutes for it."  Where [defendant] fails
> to define its proposed relevant market with reference to the rule of
> reasonable interchangeability and cross-elasticity of demand, or alleges a
> proposed relevant market that clearly does not encompass all
> interchangeable substitute products even when all factual inferences are
> granted in [defendant's] favor, the relevant market is legally insufficient
> and a motion to dismiss may be granted.[61]

---

[59] Defendant states it does not believe it is required to plead specific bids in
which plaintiff sold its ENGO-V10 product below cost, but is prepared to do so.  D.I. 129
at 6.  Defendant attached to its answering brief several documents purporting to show
bids and/or sales of the ENGO-V10 below plaintiff's costs.  *Id.*, Ex. A.  Defendant only
specifically directs the court to a single document indicating a Hawaiian electric
company being offering a 100% discount.  *Id.* at 7.  "Generally, in ruling on a motion to
dismiss, a district court relies on the complaint, attached exhibits, and matters of public
record."  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The documents in
defendant's Exhibit A are not specifically mentioned in its counterclaims, are not
attached as exhibits thereto, and are not matters of public record.  The court concludes,
therefore, those documents will not be considered in support of defendant's opposition
to plaintiff's motion to dismiss.  Although the court determines, *infra*, that defendant
plausibly pleads a "dangerous probability" of monopolization, and thus also a
"reasonable probability" under the Robinson-Patman Act, to satisfy the "recoupment"
element of its third and fourth counterclaims, its failure to plausibly plead below-cost
pricing is fatal to both of those counterclaims.

[60] *Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436 (3d Cir.
1997) ("[T]he party asserting an antitrust claim has] the burden of defining the relevant
market.") (citations omitted).

[61] *Id* at 436 (quoting *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962)); *see also
Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 ("Competing products are in the
same market if they are readily substitutable for one another; a market's outer
boundaries are determined by the reasonable interchangeability of use between a
product and its substitute, or by their cross-elasticity of demand.") (citing *Brown Shoe
Co.*, 370 U.S. at 325).

Plaintiff argues defendant fails to plausibly allege a relevant market. It further contends defendant refers to, in a conclusory and inconsistent fashion, various potential markets, which are not defined or explained.[62] Plaintiff also maintains defendant does not identify what products are, or are not, included in any of the purported markets and does not explain why the included products, and only the included products, are "reasonably interchangeable" with each other.[63] Plaintiff asserts that defendant's pleading leaves unclear what products and product market defendant is referencing.[64] Plaintiff also contends defendant appears to allege that plaintiff's and defendant's products have important differences, suggesting that they should not be included in the same relevant market.[65]

Plaintiff accurately states that defendant's counterclaims refer to various potential markets.[66] Defendant does, however, specify a specific relevant market. In the "Relevant Market" section of its counterclaims, defendant alleges "there is a market for products that can be deployed on the lower voltage side of the service transformer."[67] Although the parties' competing products function differently, defendant alleges that "Gridco and Varentec compete in the market of electric grid voltage management

---

[62] D.I. 124 at 6.
[63] *Id.* at 7.
[64] *Id.*
[65] *Id.*
[66] D.I. 116 at ¶ 1 ("field of power grid optimization"), ¶ 27 ("market of electric grid voltage management products"), ¶ 13 ("market for products that can be deployed on the lower side of the service transformer"), ¶ 90 ("VAR product market"), ¶ 106 ("line of commerce related to secondary side electric grid management"), ¶ 92 ("competitive market").
[67] *Id.* at ¶ 13.

products, and both offer their products for sale on a nationwide basis."[68]

The court disagrees with plaintiff's argument that defendant's allegations of differences between the technological approach of its SVC-20 product and plaintiff's ENGO-V10 suggest they should not be included in the same relevant market. Plaintiff cites no authority for the proposition that products employing different technological approaches to solve the same problem cannot be reasonable substitutes for one another.[69] Defendant notes that Third Circuit case law discussing antitrust market definition focuses on reasonable substitutability rather than how the products function.[70] "Interchangeability implies that one product is roughly equivalent to another for the *use to which it is put*; while there may be some degree of preference for the one over the other, either would work effectively. . . . A court making a relevant market determination looks . . . to the *uses to which the product is put by consumers in general.*"[71] By way of example, the court stated "[a] person needing transportation to work could accordingly buy a Ford or a Chevrolet automobile, or could elect to ride a horse or bicycle,

---

[68] *Id.* at ¶ 27; *see also Id.* at ¶ 2 ("Gridco and Varentec both market products that allow utility customers to improve management of the power grid. The products do this by working in conjunction with existing equipment to give utilities more control over the voltage range throughout the power distribution network, and by giving the utility the ability to flatten the voltage in the power distribution network when and where necessary."). In addition to defendant's SVC-20 and plaintiff's ENGO-V10 products, defendant identifies other products in its portfolio that also compete in the same market, such as "In-line Power Regulators ('IPRs'), Power Regulating Transformers ('PRTs'), Distributed Grid Controllers ('DGCs'), and a Grid Management and Analytics Platform ('GMAP')". *Id.* at ¶¶ 14-16.

[69] D.I. 129 at 9.

[70] *Id.*

[71] *Queen City Pizza*, 124 F.3d at 437-38 (emphasis added) (citation and internal quotation marks omitted).

assuming those options were feasible."[72]  The court concludes, therefore, that defendant's allegations of the differences between the technological approach of the parties' products does not necessarily mean those products cannot be included in the same relevant market.

The court also concludes that defendant plausibly alleges that the parties' products are interchangeable.  Defendant alleges that its products are deployed on the lower voltage segment of the electric grid:  "[t]hese service transformers transform the medium voltage to a low voltage, secondary circuit most commonly connecting residential and commercial customers to the grid."[73]  Defendant alleges utilities deploy these products "to achieve power at the required voltage levels."[74]  "Accordingly, there is a market for products that can be deployed on the lower voltage side of the service transformer."[75]  Finally, defendant alleges that both plaintiff's and defendant's products are deployed "to achieve power at the required voltage levels" offered into this market.[76] Consequently, the court determines that defendant plausibly alleges the relevant market.

### 3. Plausible Allegations that Plaintiff is Likely to Recoup Its Asserted "Predatory Losses"

---

[72] *Id.* at 437 (citation and internal quotation marks omitted).

[73] D.I. 116 at ¶ 12.

[74] *Id.* at ¶ 11.

[75] *Id.* at ¶ 13.

[76] *Id.* at ¶ 15 ("Gridco's Static Volt Ampere Reductions ('VAR') Compensators ('SVR-20') Product serves this market.  The SVR-20. . . . is deployed on the secondary side of distribution transformers.  It provides targeted voltage boosts at specific locations along a distribution factor."  *Id.* at ¶ 22 ("Varentec's ENGO-V10 product deploys on the secondary side of distribution transformers to improve management of the power grid.").

If circumstances indicate that below-cost pricing could likely produce its intended effect on the target, there is still the further question whether it would likely injure competition in the relevant market. The plaintiff must demonstrate that there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it. As we have observed on a prior occasion, "[i]n order to recoup their losses, [predators] must obtain enough market power to set higher than competitive prices, and then must sustain those prices long enough to earn in excess profits what they earlier gave up in below-cost prices."[77]

Plaintiff contends defendant fails to plausibly plead this "recoupment" element as it purportedly does not provide any essential details about the market at issue.[78] According to plaintiff, defendant does not plausibly allege plaintiff had "market power" in the relevant market–*i.e.*, the ability to control price and exclude competition in the relevant market–including through specific allegations of plaintiff's market share.[79] Defendant does not identify the competitors in the market at issue or explain why they are all susceptible to the alleged predatory pricing scheme.[80] Finally, defendant must plausibly allege the relevant market has sufficient "barriers to entry," because "without barriers to entry it would presumably be impossible to maintain supracompetitive prices for an extended time."[81] Plaintiff argues defendant offers only a conclusory assertion on

---

[77] *Brooke Grp. Ltd.*, 509 U.S. at 225-26 (alterations in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 590-91 (1986)); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 266 (2d Cir. 2001) ("Success under [a predatory pricing] scheme is rare because a predatory competitor must not only sustain short-term losses to drive out competition, but also maintain monopoly power long enough to recoup those losses and derive additional gain.") (citing *Matsushita*, 475 U.S. at 588-89).
[78] D.I. 124 at 8.
[79] *Id.*
[80] *Id.* at 9.
[81] *Id.* (quoting *Matsushita*, 475 U.S. at 591, n.15).

this issue.[82]

As plaintiff acknowledges, for defendant to meet this element it must plausibly allege plaintiff's market power in the relevant market.[83]  The Third Circuit has commented, however, that whether a complaint alleges sufficient facts as to the dangerous probability of a rival obtaining monopoly power is "a particularly fact intensive inquiry.  Courts typically should not resolve this question at the pleading stage unless it is clear on the face of the complaint that the dangerous probability standard cannot be met as a matter of law."[84]  Where, as here, defendant alleges *attempted* monopolization, the court noted such claims are "frequently interdependant so that proof of one may provide circumstantial evidence or permissible inferences of other elements."[85]  The court continued, stating, "[i]n a determination of dangerous probability–and remembering that we are only considering the face of the complaint–factors such as *significant market share* coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand may be considered.  *No single factor is dispositive.*"[86]  Based on this

---

[82] *Id.*

[83] *Id.* at 8.

[84] *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007) (citations and internal quotation marks omitted).

[85] *Id.* (emphasis added) (citations and internal quotation marks omitted); *see also Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) (Defendant can plausibly allege plaintiff's market power by relying on "circumstantial evidence" of plaintiff's market power.  To do this, defendant "must plead and produce evidence of a relevant product market, of the alleged monopolist's *dominant share* of that market, and high barriers to entry.") (emphasis added) (quoting *Queen City Pizza*, 124 F.3d at 436).

[86] *Id.* (emphasis added) (citations and internal quotation marks omitted); *id.* at 319 ("[D]etermining whether a defendant has a 'dangerous probability' of successful monopolization is a fact-sensitive inquiry, in which market share is simply one factor.").

precedent, the court disagrees with plaintiff that defendant is required to allege plaintiff's actual market share.

The court has determined defendant plausibly alleges the relevant market. Defendant also alleges that plaintiff "has already obtained a significant share of the VAR [Volt Ampere Reduction] product market"[87] and "has already obtained the business of a *significant number of electric utilities nationwide.*"[88]  In addition, defendant alleges "several significant barriers to entry that prevent prospective competitors from entering the electric grid voltage management product market."[89]  Those barriers include "[h]igh capital costs and technological obstacles associated with research and development of electric grid voltage management products."[90]  Defendant alleges:

> The nature of the electric grid voltage management product market itself presents a barrier to entry for competitors.  Consumers in this market are electric utilities.  Where Varentec has already obtained the business of a significant number of electric utilities nationwide through its anticompetitive practices, and its ENGO-V10 solution has already been deployed and physically installed into the electric grid, any new competitor is foreclosed from obtaining business from the electric utility without also discounting its product below costs.[91]

Considering the "face of the complaint," or here, the "face of defendant's counterclaims," defendant has plausibly plead plaintiff's attempted monopolization of the relevant market and its ability to "obtain enough market power to set higher than competitive prices, and then . . . sustain those prices long enough to earn in excess

---

[87] D.I. 116 at ¶ 90.

[88] *Id.* at ¶ 95 (emphasis added).  Defendant also claims it has lost sales or has otherwise been injured by plaintiff's conduct, and plaintiff's actions have slowed and impacted local markets as well as market share.  *Id.* at ¶¶ 35-36.

[89] *Id.* at ¶ 93.

[90] *Id.* at ¶ 94.

[91] *Id.* at ¶ 95.

profits what they earlier gave up in below-cost prices."[92]

To reiterate, however, because defendant failed to plausibly allege plaintiff's purported below-cost sales, counterclaims three and four should be dismissed.

**B.     State Law "Unfair Practices" (Counterclaims 5 through 10)**

Defendant's fifth through tenth counterclaims assert violations of the "Unfair Practices" statutes of California (Cal. Bus. & Prof. Code § 17043), Hawaii (Haw. Rev. Stat. § 481-3), Massachusetts (Mass. Gen. Laws Ch. 93), Maryland (Md. Code Ann., Com. Law § 11-404(a)), Oklahoma (Okl. St. Ann. § 598.3), and Arkansas (Ark. Code § 4-75-209(a)(1)), respectively.

Each of defendant's state law claims is based on the same below-cost pricing allegations underlying its federal predatory pricing claims (counterclaims three and four).  Plaintiff contends those statutes impose very similar pleading requirements, particularly, each requires defendant to allege plaintiff priced below its cost.[93]

According to plaintiff, each state statue at issue requires defendant to allege it was injured by plaintiff's below-cost pricing in the form of lost sales, but defendant failed to identify any lost sale due to plaintiff's purportedly below-cost pricing.[94]  Defendant does not dispute that the state law claims require a plausible allegation of below-cost pricing.[95]  Because the court has determined that defendant failed to plausibly allege that plaintiff engaged in below-cost pricing, defendant's state law claims should

---

[92] *Brooke Grp. Ltd.*, 509 U.S. at 225-26 (alterations in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 590-91 (1986)).
[93] D.I. 124 at 17.
[94] *Id.* (citing, as an example, *Kyne v. Ritz-Carlton Hotel Co.*, 835 F. Supp. 2d 914, 922 (D. Haw. 2011) (applying Hawaiian Unfair Practices Act).
[95] D.I. 129 at 18.

18

dismissed.[96]

## C.    Sham Litigation (Counterclaim 2)

Plaintiff maintains defendant's second counterclaim, alleging sham litigation in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, violates the First Amendment and is implausible on its face.[97]   The First Amendment to the U.S. Constitution grants a fundamental right to petition the government, including by filing a lawsuit.[98] Consequently, "[t]hose who petition the government for redress are generally immune from antitrust liability."[99]   That immunity does not, however, extend to a "'mere sham [lawsuit] to cover . . . an attempt to interfere directly with the business relationships of a competitor.'"[100]   The Supreme Court created a two-part definition of "sham litigation." "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant

---

[96] Defendant states that even a single sale below cost, "*together with* proof of the injurious effect of such act is presumptive evidence of the purpose or intent to injure competitors or destroy competition."  *Id.* at 19 (emphasis added) (quoting Cal. Bus. & Prof. Code § 1707).  Defendant, however, has not provided evidence of any injury from the single purportedly below-cost sale it alleges to support its contention that the presumption of injurious effect should apply.  Also, defendant states that it is "prepared to cite specific instances of below-cost pricing of the ENGO-V10 in each of the six states under whose laws Gridco asserts claims."  D.I. 129 at 19.  Again, "in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record."  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

[97] D.I. 124 at 10-16.

[98] *See Cal. Motor Transp. Co v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade those freedoms. . . . The right to access to the courts is indeed but one aspect of the right to petition.") (citations and internal quotation marks omitted).

[99] *Prof'l Real Estate Inv'rs v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

[100] *Prof'l Real Estate Inv'rs*, 508 U.S. at 56 (omission in original) (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)); *see also Abbott Labs. v. Teva Pharms. USA Inc.*, 432 F. Supp. 2d 408, 424-25 (D. Del. 2006) (noting First Amendment immunity does not apply if the litigation is a "sham").

19

could realistically expect success on the merits."[101] "Under the second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process*–as opposed to the *outcome* of that process–as an anticompetitive weapon."[102]

### 1. Realistic Expectation of Success on the Merits

Plaintiff argues defendant has not plausibly alleged "that no reasonable litigant could realistically expect success on the merits" in this case."[103] The Supreme Court has stated this element requires defendant to plead and prove plaintiff lacked "probable cause" to bring this lawsuit, where probable cause "requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'"[104] Plaintiff maintains defendant does not plausibly allege there is no chance that plaintiff could prevail on any of its claims.[105]

Plaintiff asserts that, even if defendant could plausibly allege that plaintiff's claims are "objectively baseless" with respect to the '867 and '922 patents, defendant's failure to allege its claim that the '184 patent is infringed is objectively baseless is fatal to defendant's sham litigation counterclaim.[106] Plaintiff reasons that because no such allegations were made, it retains a viable claim for infringement of the '184 patent

---

[101] *Id.* at 60.
[102] *Id.* at 60-61 (emphasis in original) (internal citations and quotation marks omitted).
[103] D.I. 124 at 12.
[104] *Prof'l Real Estate Inv'rs*, 508 U.S. at 62-63 (alterations in original) (quoting *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 262 (1961)).
[105] D.I. 124 at 12.
[106] *Id.* at 13.

regardless of the court's findings with respect to the '867 and '922 patents and, therefore, defendant's sham litigation counterclaim must be dismissed.[107]

Defendant does not contest that its sham litigation counterclaim is not based on plaintiff's claim of infringement of the '184 patent. It notes, however, the original complaint was filed on April 1, 2016 and asserted only infringement of the '867 and '922 patents; the amended complaint, adding a claim of infringement of the '184 patent, was filed over seven months later, on November 3, 2016.[108] Defendant argues that even if the court found it did not state a Sherman Act claim based on allegations regarding the '184 patent, it would have a separate cause of action against plaintiff for the filing of the original complaint.[109]

Each party cites the same case, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,[110] as support for their respective positions. Plaintiff relies on the court's statement that it could not conclude the suit at issue was objectively baseless where a reasonable litigant "could have expected success on *at least one of* [plaintiff's] claims."[111] Based on that language, and the failure of defendant to allege the '184 patent infringement claim is a sham, plaintiff concludes its suit is not objectively baseless because it could reasonably expect success on at least that one claim. Defendant relies on the court's statement that "*the act of filing the complaint* [is] the

---

[107] *Id.*
[108] D.I. 129 at 13 (citing D.I. 1, D.I. 114).
[109] *Id.* at 13 ("[E]ven if the Court were to find that Gridco did not state a Sherman Act claim based on its allegations regarding the '184 Patent, Gridco would have a separate cause of action against Varentec for the filing of the original Complaint in this case.").
[110] 776 F.3d 1343 (Fed. Cir. 2014).
[111] *Id.* at 1350 (emphasis added).

actionable event."[112]  Based on that language, defendant argues it would have a

separate cause of action against plaintiff for filing the original complaint.

    *Content Extraction* does not support defendant's position.  The court's statement

that "the act of filing the complaint [is] the actionable event" was made in the context of

determining whether the suit was objectively baseless with respect to the state of the

law at the time the claim was filed.[113]  The court found the plaintiff's suit not objectively

baseless "because the state of the law of § 101 was deeply uncertain *at the time

[plaintiff] filed its complaints . . . .*"[114]  As a result, the court upheld the district court's

dismissal of defendant's counterclaims where "at least one" of the claims the case was

not objectively baseless.[115]  Consequently, the court finds plaintiff's suit in this case is

not objectively baseless as it could reasonably expect success, at least, on its '184

patent infringement claim.[116]

---

[112] *Id.* (emphasis added).

[113] *Id.*

[114] *Id.* (emphasis added).

[115] *Id.*

[116] The court also disagrees that defendant would have a separate cause of
action based on the filing of the original complaint because the original complaint was
mooted with the filing of the amended complaint, and defendant asserted its
counterclaims in its answer to that amended complaint.  "This court has held that a valid
amended complaint supersedes the original complaint at the time it is filed with the
court.  An amended complaint takes the place of the original complaint, effectively
invalidating the original complaint."  *Mowafy v. Noramco of Del., Inc.*, C.A. No. 05-733,
2007 WL 2828013, at *2 (D. Del. Sept. 27, 2007); *see also, e.g., Drake v. City of Detroit*,
266 Fed. App'x 444, 448 (6th Cir. 2008) (stating that the original complaint "is a nullity,
because an amended complaint supercedes all prior complaints") (citing *Pintando v.
Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)); *Fritz v. Standard
Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an
amended complaint supersedes the original complaint.") (citing *Dussouy v. Gulf Coast
Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1991)); *accord* 6 Charles A. Wright et al., *Federal
Practice & Procedure* § 1476 (3d ed. 2013) ("A pleading that has been amended under
Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the

## 2. Attempt to Interfere with the Business Relationships of a Competitor Through the Use of the Governmental Process–as Opposed to the Outcome of that Process–as an Anticompetitive Weapon

Plaintiff contends defendant fails to plausibly allege plaintiff filed this lawsuit with the specific, subjective intent of using the costs and burdens of litigation to directly harm defendant's business.[117]  The court agrees with plaintiff.

In the "Sham Litigation" section of defendant's counterclaim, it declares "Varentec improperly filed and is prosecuting this objectively baseless patent infringement action against Gridco for the purpose of driving Gridco from the electric grid voltage management products market"[118] and "[d]efending a baseless, costly, and

---

action unless it subsequently is modified.  Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").  Plaintiff moved to file its amended complaint pursuant to Rule 15(a).  *See* D.I. 112.

Even with respect to the '867 and '922 patents, defendant's sham litigation counterclaim primarily rests on its disagreement with plaintiff that its products infringe those patents.  Defendant argues "[t]he technical papers or marketing documents relied on by Varentec do not actually describe how the SVC-20 operates," D.I. 116 at ¶ 48, and "Varentec lacked a reasonable basis to initiate its patent infringement suit against Gridco in that it relied on technical papers or marketing documents in support of its infringement claim.  The technical papers and marketing documents Varentec relied on do not actually describe how the SVC-20 operates," *Id.* at ¶ 68, and declares that "Varentec knows or reasonably should know that it cannot prevail on its infringement claim under the doctrine of equivalents as doing so would vitiate the 'predetermined delay' limitation of claim 1 of the '867 and '922 patents.  Based on the prosecution history Varentec cannot reasonably argue that its patent would have issued without the 'predetermined delay' limitation."  *Id.* at ¶ 72.  Defendant also complains that plaintiff did not timely produced documents in response to defendant's First Request for Production. *Id.* at ¶ 56.  As plaintiff correctly notes, these are common positions taken by almost all defendants in patent cases, D.I. 124 at 12, and do not plausibly support defendant's position that plaintiff's claims of infringement of the '867 and '922 are objectively baseless.

[117] D.I. 124 at 13.
[118] D.I. 116 at ¶ 73.

burdensome patent litigation impairs Gridco's ability to compete in the electric grid voltage management products market."[119]  Defendant also alleges it "is a small Massachusetts-based startup"[120] and that plaintiff and defendant are competitors.[121]

The allegation that plaintiff brought this suit for the purpose of driving defendant from the grid voltage management products market is simply a bald assertion, as is the allegation that this action is "baseless."  That defending a patent suit is costly and burdensome is unsurprising as that is almost always the case.  Small companies are often a party in patent litigation and competitors frequently engage in such litigation.  These allegations do not plausibly support defendant's contention that plaintiff brought this action with specific, subjective intent of using the costs and burdens of litigation to directly harm defendant's business.

Because defendant fails to plausibly allege the objective and subjective components of a sham, its second counterclaim should be dismissed.

## V.    CONCLUSION

Based on the above, the court concludes that plaintiff's motion to dismiss defendant's second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth counterclaims[122] should be granted.  In briefing, plaintiff requested that its motion be granted with prejudice and without leave to amend.[123]  Plaintiff argues defendant has

---

[119] *Id.* at ¶ 74; *see also id.* at ¶ 59 ("Varentec instituted this objectively baseless lawsuit in order to subject its competitor, Gridco, to a burdensome and costly litigation in order to drive Gridco out of the electric grid voltage management product market.").
[120] *Id.* at ¶ 7.
[121] *Id.* at ¶ 14.
[122] D.I. 123.
[123] D.I. 124 at 18; D.I. 136 at 10.

not sought leave to amend and that, in any event, any attempt to amend would be futile.[124]  The court declines plaintiff's request.  Although defendant has not filed a motion to amend, it indicated plaintiff has produced numerous documents in the course of this litigation and is prepared to identify those purportedly demonstrating plaintiff's below-cost pricing, which it could do in a proposed amended pleading.[125]  Plaintiff also maintains any attempt to amend defendant's counterclaims would be futile.  That could end up being correct.  At this point, however, not having a proposed amended pleading to review, the court is unable to make that determination.  Consequently, the court determines plaintiff's motion should be granted without prejudice.

## RECOMMENDED DISPOSITION

Consistent with the findings contained in the Report and Recommendation,

IT IS RECOMMENDED that plaintiff's motion (D.I. 123) be GRANTED without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b)(1), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is

---

[124] D.I. 136 at 10.  The court notes plaintiff presented this argument in its reply brief.
[125] D.I. 129 at 6.

found on the Court's website ([www.ded.uscourts.gov.](www.ded.uscourts.gov.))


Dated:  June 6, 2017                                   /s/ Mary Pat Thynge